JOHN B. BULGOZDY (Cal. Bar No. 219897)
Email: bulgozdyj@sec.gov
PETER F. DEL GRECO (Cal. Bar No. 164925)
Email: delgrecop@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WORLD CAPITAL MARKET INC.;<br>WCM777 INC.; WCM777 LTD. d/b/a<br>WCM777 ENTERPRISES, INC.; and<br>MING XU a/k/a PHIL MING XU,<br><br>                    Defendants,<br><br>          and<br>KINGDOM CAPITAL MARKET, LLC;<br>MANNA HOLDING GROUP, LLC;<br>MANNA SOURCE INTERNATIONAL,<br>INC.;WCM RESOURCES, INC.; AEON<br>OPERATING, INC.; AND PMX JEWELS,<br>LTD.,<br><br>                    Relief Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), 22(a), and 22(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), 77v(a) & 77v(c), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) and 27(b)of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), 78aa(a) & 78aa(b).

2.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a). because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.

## SUMMARY

3.     This matter involves an ongoing pyramid scheme, Ponzi scheme, and misappropriation of investor funds through an unregistered securities offering that targets members of the Asian-American and Hispanic-American communities, as well as foreign investors.  Beginning around March 2013 and continuing to the present, operating under the offering name "WCM777," Defendants have collected over $65 million from investors in the United States and abroad.  Of that amount, over $28 million was deposited into bank accounts in the United States between March and October 2013.  After October 2013, Defendants deposited investor funds into a bank account in Hong Kong.

4.     "WCM777" is the umbrella name that Defendants use for their multi-level marketing scheme, and as used herein, the term "WCM777" refers to that offering.  Through publicly available websites and promotional materials, Defendants offer packages or membership units in "WCM777."  Defendants portray WCM777 as a profitable multi-level marketing venture that sells packages of "cloud media" or cloud services.  In the WCM777 offering, Defendants promise investors that they will earn 100% or more returns in 100 days.  Defendants represent that the "points"

investors receive for their investments will be convertible into equity in initial public offerings ("IPOs") of "high tech" companies Defendants are purportedly incubating. Defendants have facilitated a "secondary market" in the points they award to investors, and Defendants estimate that $890 million of the points have traded on this market.

5.     In fact, Defendants do not realize any appreciable revenue other than from the sale of "packages" of cloud services to investors.  WCM777 is not profitable, and is a pyramid scheme.  Defendants use some of the investor funds to make Ponzi payments of returns to investors.  The bulk of the investor funds have been used to pay cash for real property purchased in the United States, purchased in many cases with funds transferred through Defendant World Capital Market Inc. ("WCM"), and held in the names of Relief Defendants Manna Holding Group LLC and Kingdom Capital Market LLC, which are affiliated with Defendant Xu.  The properties include two golf courses, a warehouse, vacant land, and several single family homes.  Defendants have also used investor funds to play the stock market and to make investments, through intermediary companies, in an oil and gas offering of Relief Defendant Aeon Operating, Inc.  Defendants have also sent investor funds to Relief Defendant PMX Jewels, Limited, which is a rough diamond jewel merchant in Hong Kong, and to Relief Defendant Manna Source International, Inc., which is affiliated with Defendant Xu.

6.     Defendant Ming Xu is involved in all aspects of the fraud:  He is chief executive officer of Defendant WCM, and chairman of Defendants WCM, WCM777 Inc. and WCM777 Ltd.  Defendant Xu is also a signatory on the bank accounts of Relief Defendants Kingdom Capital Market LLC and WCM Resources, Inc., and was a signatory on the bank accounts of Manna Source International Inc.  Defendant Xu's spouse is the managing member of Relief Defendant Manna Holding Group LLC.

7.     As a result of the conduct alleged herein, Defendants have violated the antifraud provisions of the Securities Act of 1933 ("Securities Act") and the

Securities Exchange Act of 1934 ("Exchange Act"), and have violated the registration provisions of Section 5 of the Securities Act.  Defendant Xu is liable for these violations directly, and as a control person under Section 20(a) of the Exchange Act.

8.      The SEC brings this emergency action and seeks a temporary restraining order and preliminary injunction, among other relief, to halt Defendants' unlawful conduct and preserve the *status quo*.  The SEC also seeks entry of permanent injunctions against Defendants; disgorgement of ill-gotten gains and prejudgment interest thereon from Defendants and Relief Defendants; and civil penalties from Defendants.  Finally, the SEC seeks an officer and director bar against Defendant Xu.

## THE DEFENDANTS

9.      **World Capital Market Inc.** is a Delaware corporation headquartered in Pasadena, California.  Xu is the founder and chairman of WCM.  WCM maintains a website at www.worldcapitalmarket.com which describes WCM as a "merchant banking firm" that acts as a "strategic investor" and "incubates" companies in a variety of industries.  WCM is not registered with the SEC, and has not registered any offering or class of its securities with the SEC.

10.     **WCM777 Inc.** is a Nevada corporation headquartered in City of Industry, California.  Xu is the chairman of WCM777 Inc.  WCM777 Inc. was incorporated in March 2013, and a notice of dissolution was filed dated September 24, 2013.  WCM777 Inc. is not registered with the SEC, and has not registered any offering or class of its securities with the SEC.

11.     **WMC777 Ltd., d/b/a WCM777 Enterprises, Inc.,** is a Hong Kong corporation headquartered in Kowloon.  On February 21, 2014, WCM777 Ltd. filed a notice with the California Secretary of State to do business in California as WCM777 Enterprises, Inc., and has offices at the same address in the City of Industry, California, as WCM777 Inc.  Xu is the registered agent for the entity.  On January 27, 2014, WCM777 Ltd. filed a lawsuit against a former employee in the Superior Court for the State of California, County of Los Angeles.

12.    **Ming Xu a/k/a Phil Ming Xu** is a resident of Temple City, California. Xu is the chief executive officer of Defendant WCM.  Xu is the chairman of WCM, and of Defendants WCM777 Inc. and WCM777 Ltd. d/b/a WCM777 Enterprises, Inc.  Xu is the sole managing member of Relief Defendant Kingdom Capital Market, LLC.  Xu is the chief executive officer of Relief Defendant Manna Source International, Inc.  Xu is a director of Relief Defendant WCM Resources, Inc.  Xu's spouse is the managing member of Relief Defendant Manna Holding Group, LLC.

## RELIEF DEFENDANTS

13.    **Kingdom Capital Market, LLC** ("Kingdom Capital") is a Delaware limited liability company headquartered at the same address in the City of Industry, California, as WCM777 Inc.  Kingdom Capital Market LLC was incorporated on August 13, 2013.  Xu is the sole managing member, registered agent, and is a signatory, either individually or as a co-signer, on all known bank accounts.

14.    **Manna Holding Group, LLC** ("Manna Holding") is a California limited liability company headquartered in Temple City, California.  Its managing member and sole contributing member is Xu's spouse.  Manna Holding's operating agreement give Xu's home address as the address for the managing member.

15.    **Manna Source International, Inc.** ("Manna Source International") is a California corporation that purportedly is headquartered in Corona, California.  In bank account opening documents, it uses the same address in Pasadena, California, as WCM.  Manna Source International was organized in September 2013.  In September 2013, Xu was identified as its chief executive officer and sole signatory on a bank account application.  In January 2014, Xu was removed as a signatory on its bank accounts.

16.    **WCM Resources, Inc.** ("WCM Resources") is a Texas corporation headquartered in Terrell, Texas.  Xu is one of its directors, and is a co-signer on its bank account.

///

4

17.     **Aeon Operating, Inc.** ("Aeon") is a Texas corporation headquartered in Fate, Texas.  Aeon's registered agent for service of process is an individual who is a director of WCM Resources.

18.     **PMX Jewels Ltd.** ("PMX Jewels") is a Hong Kong company based in Kowloon.  PMX Jewels has the same address as WCM777 Ltd.  PMX is engaged in the business of trading in rough diamonds.

## FACTUAL ALLEGATIONS

**A.     Background of the WCM and WCM777 Corporate Entities**

19.     WCM, WCM777 Inc., and WCM777 Ltd. are controlled by Ming Xu. Defendant WCM, a Delaware corporation, was incorporated on or about March 27, 2012.  Defendant Xu is variously identified as the founder, chairman, and/or president of WCM in various documents made available to investors.

20.     WCM describes itself as a "global merchant investment bank" with branch offices in the United States, China, and Japan.  WCM purports to be in "partnership with over 700 investment organizations" including, among others, Siemens, Denny's, and Goldman Sachs.  WCM's profit and loss statement for the period March to September 2013 shows no revenue and a net loss of $282,603.48.

21.     WCM777 Inc. was a Nevada corporation in existence for less than a year in 2013.  Defendants opened and maintained bank accounts in the United States in the name of WCM777 Inc., and in the name of WCM777.  WCM777 Inc. was a wholly-owned subsidiary of WCM.

22.     WCM777 Ltd., d/b/a WCM777 Enterprises, Inc. is a Hong Kong corporation that is a wholly-owned subsidiary of WCM.

23.     WCM777 USA Inc. is a California corporation headquartered in Pasadena, California, at the same address used by WCM and Manna Source International.  WCM777 USA was incorporated on September 25, 2013, which is the day after Defendants dissolved WCM777 Inc., their Nevada corporation.  Defendant Xu is the registered agent for this entity.  Therefore, Defendants have a United States

corporation, WCM777 USA Inc., which is ready to start operations at any time.

24.     Defendants operate a website at WCM777.com, through which they make or made the WCM777 offering.  The website domain is registered to Xu and is domiciled in the United States.  The website has operated continuously since at least March 2013 through early 2014.

### B.     The Unregistered WCM777 Offering

#### 1.     Defendants' solicitation of investors

25.     Beginning in March 2013, and continuing to the present, Defendants have offered securities, in the form of packages of services or membership units, to the public in the WCM777 offering.

26.     Defendants, directly and indirectly, solicited investors through the website at WCM777.com, in-person seminars and presentations, webinars, and through the Internet such as through posts on message boards.  Defendants solicited investors in the United States and abroad, through the Internet and rallies and other events.  At all relevant times, Defendant Xu resided in the United States, and Defendants WCM, WCM777 Inc., and/or WCM777 Ltd. had offices in and or did business in the United States.

27.     At all material times, the terms of the offering on the WCM777 website have remained constant.  Defendants have prepared and distributed a PowerPoint presentation that explains the WCM777 offering.  This presentation has been translated into Chinese and Spanish.  WCM777's website posts comments and other information in English and Chinese.

28.     From March 2013 through September 2013, Defendants deposited investor funds from the WCM777 offering into two bank accounts in the United States.  One account held in the name "WCM777" received approximately $20 million of investor proceeds during this period.  The other account held in the name "WCM777 Inc." received approximately $8 million of investor funds.  The investor funds deposited into Defendants' United States bank accounts originated from

1  persons in the United States and from abroad.

2       29.    Around October 2013, at the same time that state regulators began

3  investigating the WCM777 offering, Defendants stopped depositing investor funds

4  into their United States bank accounts, although the WCM777 offering continued.

5  Since October 2013, Defendants have raised more than $37 million from investors

6  which has been deposited into their Hong Kong bank account.  Since October 2013,

7  approximately 38% of the investor funds raised came from persons residing in the

8  United States.

9              **2.    The terms of the WCM777 offering**

10       30.    In the WCM777 offering, Defendants offer and sell five different levels

11  of "packages" of cloud-based computing services.  In addition to the computing

12  services, each package level promises returns in the form of cash and "points."

13       31.    Investors can earn the cash and "points" by referring new members, or

14  they can earn the cash and points passively based on the growth of the WCM777

15  business and its profits.  The "points" have two uses:  (1) they can be redeemed for

16  goods and services to be offered by WCM777 and its affiliates, or (2) they can be

17  also converted into equity in an initial public offering of a company named

18  WCM7.com, or other unidentified "high tech" companies that Defendants claim they

19  will bring public.

20       32.    In addition, Defendants facilitate a third use of "points" by providing a

21  "secondary" market for individuals to buy and sell "points" for cash.  Defendants

22  maintain accounts that keep track of the amount of an individual's points and record

23  transfers of points.

24       33.    Each of the five different levels of membership units purport to provide

25  purchasers with some combination of cloud computing services, with more services

26  being provided to members who purchase higher levels.  There are seven types of

27  "World Cloud Media Products:" (1) "Videos," (2) "Books," (3) "Music," (4)

28  "Games," (5) "Space," (6) "Social," and (7) the "Lucky Cloud."  The five levels of

membership units provide different combinations of World Cloud Media Products for different terms of from one to five years.

34.     Each of the five levels of packages promises to pay a return in 100 days, which is called the "Global Business Bonus." The first four levels of packages promise to pay a total return of approximately 100% of the amount invested, with half paid in cash and half paid in points. The fifth, or highest, level offers to pay a total return 160% of the amount invested, with half paid in cash and half paid in points. Thus, the fifth level offers to pay an 80% return in cash in 100 days.

35.     According to Defendants' offering materials, the five levels of cloud packages offered and sold by WCM777, including cost, benefits, and promised 100-day returns, are:

| WCM777 Package | Cost | Benefits | 100-Day Return |
|---|---|---|---|
| WCM701 – WCM 3 Introductory Package ("junior distributor") | $399 | • 1 year of Space and Music cloud services<br>• 300 raffle tickets<br>• 30 lottery draw coupons<br>• Platinum Card | $4 per day [$200 and 200 points] |
| WCM702 – WCM 3 Progressive Package ("supervisor") | $799 | • 3 years of Space and Music cloud services<br>• 700 raffle tickets<br>• 70 lottery draw coupons<br>• Platinum Card | $8 per day [$400 and 400 points] |
| WCM703 – WCM 3 Official Package ("manager") | $1,199 | • 5 years of Space and Music cloud services<br>• 1100 raffle tickets<br>• 110 lottery draw coupons<br>• Platinum Card | $12 per day [$600 and 600 points] |

| WCM777 Package | Cost | Benefits | 100-Day Return |
|---|---|---|---|
| WCM704 – WCM 5 Official Package ("senior manager") | $1,599 | • 5 years of Space, Music, Books, and Video cloud services<br>• 1500 raffle tickets<br>• 150 lottery draw coupons<br>• Platinum Card | $16 per day [$800 and 800 points] |
| WCM705 – WCM 7 Official Package ("director") | $1,999 | • 5 years of all cloud services<br>• 1900 raffle tickets<br>• 190 lottery draw coupons<br>• Platinum Card | $32 per day [$1,600 and 1,600 points] |

36.     Defendants represent that WCM777 members earn bonus points based on the level of their investment, the business volume of WCM777, and the profits of WCM777.  In fact, the "Global Business Bonus" is described as "profit-sharing units, namely 100 times bonus-sharing of the profits."

37.     Defendants encourage investors to accumulate points.   For example, an October 1, 2013 thread posted on WCM777's online forum purportedly authored by Defendant Xu states:  "If you redeem for cash, you are obligated to pay tax in your country.  So far only 20% of people redeem for cash."  A July 24, 2013 thread posted on WCM777's online forum purportedly authored by Defendant Xu states, in pertinent part:  "All members can get stocks of our cloud media Company, WCM7.com, a pre-IPO company in NASDAQ . . . .  We are incubating 300 high tech companies.  All Kingdom members can participate by swapping points for stocks of our incubated companies.  After the companies go public, our community wealth will multiply."

38.     Defendants also encourage investors to buy and sell points on a secondary market that Defendants facilitate.  Defendants provide a trading platform referred to on the WCM777 PowerPoint as an "auction platform of internal system"

and on the WCM777 website as a "profit point trading platform." Defendants represent that investors can sell points on this secondary market as an "exit strategy," and that the points have a dollar value.

39.     Defendants claim that more than $890 million of points have been traded in the secondary market platform operated by Defendants.

40.     The points acquired by investors provide the investor with the right to receive stock, or convert the points to stock, in any of the companies that Defendants represent they are bringing to the market.

41.     The packages and the points are also securities in the form of investment contracts. They represent an investment of money, in a common enterprise, with the expectation of profits to be derived from the efforts of a third party. The investments purportedly gain in value depending on the success of the WCM777 enterprise, and returns are based on, among other things, its growth and profitability.

### 3.     The WCM777 offering is not registered

42.     Defendants have not registered with the SEC any offering of any kind by WCM, WCM777 Inc., or WCM777 Ltd.

43.     As alleged below, several states have brought actions against Defendants for the offer and sale of unregistered securities, and Defendants consented to orders in California and Colorado charging, among other things, that Defendants had engaged in the sale of unregistered securities.

### C.     Defendants' Misrepresentations and Omissions

### 1.     WCM777 is a pyramid scheme

44.     WCM777 is a classic unlawful pyramid scheme. WCM777 sells its products exclusively to investors and has no apparent source of revenues other than money received from new investors. WCM777 does not offer to sell any of the so-called "World Cloud Media Services" other than as part of a package to investors who receive points. In fact, points are needed to "activate" the cloud services.

///

45.     In fact, as alleged above, WCM recorded a net loss of $282,603.48 for the period from March 2013 to September 2013.  WCM777 Inc.'s profit and loss statement for the same period shows total revenues of $26,342,239.82 from sales, and a net loss of $7,954,862.16.  Bank accounts in the name of "WCM777" and "WCM777 Inc." in the United States show that almost all of its revenue came from sales of packages of cloud services to investors.  These bank accounts do not show any substantial source of deposits from any other source.

46.     The WCM777 offering and operation depends almost entirely on the recruitment of new investors and purchases by existing investors to provide funds to pay any returns to investors.  Because there is no source of money other than from new and existing investors, the scheme is destined to collapse and leave investors with substantial losses.

47.     Defendants falsely represented that WCM777 is and was a profitable enterprise, when in fact it is a pyramid scheme with no source of revenue other than sales to investors, and it is not and was not deriving a profit from sale of goods and services to third parties.  Defendants failed to disclose material information that WCM777 was not profitable and did not have any source of revenue other than sales to investors.

### 2.     Ponzi payments to investors

48.     Defendants represented that WCM777 paid cash returns to investors from profits and/or net profits of the WCM777 enterprise.

49.     On its website, WCM777 specifically addressed the question:  "Is WCM777 a Ponzi Game?"  WCM777 stated, among other comments in response to that question:  "In summary, we are not a Ponzi game company.  We are creating a new business model."

50.     In fact, despite having no identifiable source of revenue other than proceeds from sales to new investors, during the period from March to October 2013, Defendants paid approximately $4.07 million in returns to WCM777 investors.

During the period March to September 2013, WCM777 Inc. reported a net loss of over $7 million, and WCM reported a net loss of over $280,000.

51.   The cash paid to investors were Ponzi payments made with funds received from other investors, and were not paid from net income or profits of the WCM777 enterprise.

52.   Defendants' statements that they paid returns from net profits and that they were "not a Ponzi game company" were false and misleading, and omitted material information that WCM777 did not have any revenue producing business operations other than the sale of investments, did not have profits or net profits, and that payments of cash returns were being funded by money received from new investors.

### 3.   WCM777's purported IPOs

53.   Defendants represent to investors that the points they acquire will be convertible into equity of an IPO of an entity named WCM7.com, and of other unidentified companies.  Defendants have, on the WCM777 website, advised investors to hold on to their points so that they can become wealthy when there is an IPO.

54.   On the WCM777 website, Defendants state that points can be converted into equity of "WCM7.com" which is described as a "pre-IPO company in NASDAQ."  The NASDAQ and the New York Stock Exchange have not received applications for listings for the Defendants' companies.  WCM7.com also is not registered with any state in the United States.

55.   Defendants have not filed any registration statements with the SEC for any company or offering of securities.

56.   Defendants' statements about an IPO of WCM7.com and other unidentified companies were false and misleading, and omitted material information that Defendants were not preparing for an IPO of WCM7.com or any other companies.

### 4.   Defendants' background and experience

57.   Defendants make various false claims about their connections to and experience with major companies.

58.   Defendants claim on WCM777's website that it is in partnership with Siemens.  This claim is false, and no form of cooperation exists between Siemens and Defendants.

59.   Defendants claim on WCM777's website to have a partnership with Denny's and use Denny's corporate logo.  This claim is false, and Denny's does not have and has not had any business relationship with Defendants, and Defendants do not have permission to use Denny's name or logo.

60.   Defendants claim on WCM777's website to have a relationship with Goldman Sachs.  This claim is false, and Goldman Sachs does not have any relationship to Defendants.

61.   Defendants claim that WCM acted as a financial advisor to Stouffer Hotels and Resorts in a $45 million refinancing.  This statement is false.  In fact, Stouffer Hotels has not been in business since 1996 when it sold its real estate portfolio to another company, and that was then purchased by Marriot in 1997.  Marriott does not have any relationship with Defendants.

62.   Defendants' statements about their corporate relationships were materially false and misleading, and omitted material information that Defendants did not have business relationships with these entities.

### 5.   Defendants' misappropriation and misuse of investor proceeds

63.   Defendants represented that investor funds were being used to grow the cloud media products and to incubate "300 high tech" companies.

64.   In addition to making Ponzi payments to investors as alleged above, Defendants used the bulk of the approximately $28 million in investor proceeds deposited into United States bank accounts:  (1) to buy real property in the United States held in the name of third parties associated with Defendant Xu; (2) to open a

13

brokerage account in the name of WCM to trade listed equities; and (3) to provide funds to companies controlled by Xu.

65.     Defendants opened and used numerous accounts located at three different banks in the United States, to move and commingle most of the investor proceeds before they were disbursed to third parties.  The bulk of the investor proceeds were initially deposited into two primary accounts, one held in the name of "WCM777" and the other in the name of "WCM777 Inc."  Defendants then transferred most of the investor proceeds into and out of other accounts held in the names of WCM, WCM777, and the Relief Defendants.  The commingled funds were ultimately disbursed to or for the benefit of the Defendants and their affiliates, including but not limited to the Relief Defendants.

66.     Upon information and belief, Defendants have also used investor proceeds deposited into accounts in Hong Kong to purchase real property in the United States held in the name of third parties associated with Defendant Xu.

### a.     Purchases of real property in the United States

67.     Beginning in August 2013, third parties associated with Defendant Xu purchased seven properties, at a total cost of about $13.78 million, paid in cash.  Of that amount, at least $9.93 million is directly traceable to investor proceeds deposited in WCM777 bank accounts in the United States.  The remaining $3.85 million was transferred to the United States from Hong Kong, and upon information and belief, represents investor proceeds deposited into Defendants' Hong Kong accounts.

68.     Defendants purchased the following properties with investor funds that originated from WCM777 accounts in the United States:

a.     In August 2013, Defendants purchased the Glen Ivy Golf Club, located in Corona, California, for $6.5 million in cash.  All of the cash used to purchase this property originated from WCM777 accounts that held investor proceeds.  The property was titled in the name of Defendant WCM at the time of purchase.  Approximately two weeks later, Defendants transferred title to Relief

1  Defendant Kingdom Capital.

2        b.      In August 2013, Defendants purchased a single family home

3  located in Walnut, California, for $2.4 million in cash.  At least $75,000 of the cash

4  used for that purchase originated from WCM777 accounts that held investor

5  proceeds.  Upon information and belief, some or all of the remaining cash used to

6  purchase that property are proceeds from the WCM777 offering that were transferred

7  to the United States from Hong Kong to complete the transaction.  The property is

8  titled in the name of Relief Defendant Manna Holding.

9        c.      In September 2013, Defendants purchased a golf club named the

10  Links at Summerly, located in Lake Elsinore, California, for $1.65 million in cash.

11  The cash used for that purchase originated from WCM777 accounts that held investor

12  proceeds.  The property is titled in the name of Relief Defendant Kingdom Capital.

13        d.      In October 2013, Defendants purchased a single family home in

14  Monrovia, California for $980,000 in cash.  The cash used for that purchase

15  originated from WCM777 accounts that held investor proceeds.  The property is titled

16  in the name of Relief Defendant Manna Holding.

17        e.      In November 2013, Defendants purchased a single family home in

18  Lake Elsinore, California for $500,000 in cash.  The cash used for that purchase

19  originated from WCM777 accounts that held investor proceeds.  The property is titled

20  in the name of Relief Defendant Kingdom Capital.

21        f.      In January 2014, Defendants purchased vacant land in New

22  Cuyama, California, for $700,000 in cash.  Upon information and belief, some or all

23  of the funds used for that purchase are proceeds from the WCM777 offering. The

24  property is titled in the name of Relief Defendant Kingdom Capital.

25        g.      In January 2014, Defendants purchased a warehouse in El Monte,

26  California for $1,051,750 in cash.  At least $200,000 of the purchase price constitutes

27  proceeds from the WCM777 offering.  Upon information and belief, the remaining

28  cash used to purchase this property are also proceeds from the WCM777 offering.

1   The property is titled in the name of Relief Defendant Kingdom Capital.

2       69.    Also, in October 2013, Defendants contracted to purchase a single

3   family home located in Monrovia, California.  The property was to be titled in the

4   name of Relief Defendant Manna Holding.  In or around October 2013, Defendants

5   deposited into escrow $1,456,041.56 to close this purchase, but the sale did not close.

6   In February 2014, Relief Defendant Manna Holding recorded a $40,000 deed of trust

7   on the property, the escrow was closed, and the funds were disbursed to Manna

8   Holding Group.

9              **b.**    **Brokerage account**

10       70.    Defendant Ming Xu opened an account at a major brokerage firm in

11   June 2013 in the name of WCM.  Between June 2013 and January 2014, Defendants

12   deposited a total of $2.155 million into this brokerage account.  The cash originated

13   from WCM777 accounts that held investor proceeds.

14       71.    Defendants use these funds to play the stock market and invest in listed

15   equities.

16       72.    In December 2013, Defendants transferred the funds from the brokerage

17   account to a WCM bank account.

18              **c.**    **Cash transferred to WCM and Relief Defendants**

19       73.    Defendants disbursed a total of $7.5 million of investor proceeds to bank

20   accounts held in the name of Relief Defendant Kingdom Capital.

21          a.    As alleged above, a total of approximately $1.96 million of these

22   funds were disbursed to buy real property.

23          b.    Approximately $4.1 million was transferred from Kingdom

24   Capital to Relief Defendant WCM Resources, which in turn transferred

25   approximately $2.667 million to Relief Defendant Aeon.

26       74.    Defendants disbursed approximately $2 million of investor proceeds to

27   bank accounts held in the name of Relief Defendant Manna Source International,

28   which transferred, directly or indirectly, approximately $1 million to bank accounts

1  held in the name of WCM.

2      75.    Defendants disbursed approximately $550,000 of investor proceeds to

3  Relief Defendant PMX Jewels, and another $200,000 was disbursed to a principal or

4  officer of PMX Jewels.

5      76.    Defendants disbursed approximately $3.38 million of investor proceeds

6  for the benefit of Relief Defendant Manna Holding.  In 2013, Manna Holding

7  purportedly executed two non-recourse "agreements" to pay WCM the amount of

8  $2.5 million plus interest in 2019, and to pay Kingdom Capital the amount of $1

9  million plus interest in 2019.

10      77.    Defendants also disbursed investor proceeds to the following companies

11  associated or otherwise affiliated with Defendant Xu:

12          a.    $200,000 was disbursed to ToPacific Inc.,

13          b.    $210,000 was disbursed to Agape Technology,

14          c.    $230,000 was disbursed to Media for Christ

15      **D.**    **Defendants Acted with Scienter**

16      78.    At all relevant times, Defendant Xu controlled WCM, WCM777 Inc.,

17  and WCM777 Ltd.  Defendant Xu has been identified in the WCM777 offering

18  materials as the founder, chairman, and president of WCM, and the chairman of

19  WCM777.  Defendant Xu registered and owned the WCM777 website.

20      79.    At all relevant times, Defendant Xu acted with scienter.

21      80.    Defendant Xu knew, or was reckless in not knowing, that the false and

22  misleading representations, and material omissions, were being made to investors

23  about WCM777's profitability, IPOs, use of proceeds, and the affiliations with

24  prominent companies.  Xu knew, or was reckless in not knowing, that Defendants did

25  not have any products that were generating revenue other than from investors, and

26  that any payments to investors were Ponzi payments made with other investors'

27  money.

28  ///

81.     As a principal of WCM and WCM777, Xu's mental state is imputed to his companies.

**E.     Relief Defendants Hold Proceeds of the Fraud**

82.     Relief Defendant Kingdom Capital, in addition to any remaining cash, holds title to five pieces of property purchased with approximately $10.4 million of investor proceeds.

83.     Relief Defendant Manna Holding holds two pieces of property purchased with approximately $3.38 million of investor proceeds.  In addition, approximately $1.352 million was returned from an escrow account to Manna Holding.

84.     Relief Defendant WCM Resources holds cash estimated to be in excess of $1 million of investor proceeds.  The only identifiable source of deposits into WCM Resources accounts was investor proceeds from the WCM777 offering.

85.     Relief Defendant Aeon received approximately $2.667 million in investor proceeds transferred through WCM Resources.

86.     Relief Defendant PMX Jewels received approximately $550,000 of investor proceeds.

87.     Relief Defendant Manna Source International may hold cash.  The only identifiable source of deposits into Manna Source International accounts was investor proceeds from the WCM777 offering.

**F.     Regulatory Actions against Defendants**

88.     On November 11, 2013, the Securities Division of the Commonwealth of Massachusetts issued a Consent Order in the Matter of World Capital Markets, Inc. & WCM777, Inc.  The Consent Order stated that Massachusetts opened an investigation in September 2013, and in November 2013 the respondents submitted an offer of settlement.

89.     On January 8, 2014, the State of California, Business, Consumer Services and Housing Agency, Department of Business Oversight, issued a Desist

and Refrain Order against WCM; WCM777, Inc.; WCM777 Limited; Ming Xu, and others, which found that the named parties had unlawfully sold unregistered securities, and had made untrue statements of material fact and omission of material fact necessary to make statements not misleading in the offer and sale of securities, and ordered them to desist from such conduct.

90.   On January 21, 2014, the Securities Commissioner for the State of Colorado issued a Stipulation for Consent Cease and Desist Order Concerning World Capital Markets, Inc., WCM777, Inc. and Ming Xu.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants)

### Fraud in Connection With the Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

91.   The SEC realleges and incorporates by reference paragraphs 1 through 90 above.

92.   Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

a.   employed devices, schemes, or artifices to defraud;

b.   made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c.   engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

93.   By engaging in the conduct described above, Defendants, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants)

### Fraud in the Offer and Sale of Securities

### Violations of Section 17(a) of the Securities Act

94.     The SEC realleges and incorporates by reference paragraphs 1 through 90 above.

95.     Defendants, by engaging in the conduct described above, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

      a.     with scienter, employed devices, schemes, or artifices to defraud;

      b.     obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.     engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

96.     By engaging in the conduct described above, Defendants, violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF

### (Against all Defendants)

### Sale of Unregistered Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

97.     The SEC realleges and incorporates by reference paragraphs 1 through 90 above.

98.     Defendants, by engaging in the conduct described above, directly or indirectly, made use of means or instruments or transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or

cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

99.   No registration statement has been filed with the SEC or has been in effect with respect to any of the offerings alleged herein, and no exemption from registration applies.

100.   By engaging in the conduct described above, Defendants have violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## FOURTH CLAIM FOR RELIEF

### Controlling Person Liability

### Under Section 20(a) of the Exchange Act

### (Against Xu)

101.   The SEC realleges and incorporates by reference paragraphs 1 through 90 above.

102.   Defendant Xu is, or was at the time of the acts and conduct set forth herein were committed, directly or indirectly, a person who controlled WCM, WCM777 Inc., and WCM777 Limited, each of which sold securities through fraudulent means in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

103.   By engaging in the conduct described above, under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), defendant Xu is jointly and severally liable with, and to the same extent as, the persons he controlled for violations of Sections 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

///

///

## I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

## II.

Issue judgments, in forms consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining Defendants, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

## III.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction against all Defendants, freezing the assets of Defendants Ming Xu, WCM, WCM777 Inc., WCM777 Ltd., and their respective affiliates, and freezing the assets of Relief Defendants Kingdom Capital Market LLC; Manna Holding Group, LLC; Manna Source International, Inc.; WCM Resources, Inc.; Aeon Operating, Inc.; and PMX Jewels, Limited, traceable to the fraud; ordering Defendants to repatriate all funds raised from United States investors that were sent or deposited into any offshore accounts, including but not limited to WCM777's Hong Kong bank account(s); prohibiting all Defendants from destroying documents; granting expedited discovery; requiring accountings from Defendants; and appointing a Receiver over WCM, WCM777 Inc., WMC777 Ltd. d/b/a WCM777 Enterprises, Inc., and their respective affiliates.

///

///

### IV.

Order Defendants and Relief Defendants to disgorge all ill-gotten gains they received, together with prejudgment interest thereon.

### V.

Order Xu, WCM, WCM777 Inc., and WCM777 Ltd. to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### VI.

Issue an order barring Defendant Xu from serving as an officer or director of a public company pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

### VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VIII.

Grant such other and further relief as this Court may determine to be just and necessary.


Dated:  March 27, 2014

                                        /s/ Peter F. Del Greco
                                        Peter F. Del Greco
                                        Attorney for Plaintiff
                                        Securities and Exchange Commission