UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WORLD CAPITAL MARKET INC.; WCM777 INC.; WCM777 LTD. d/b/a WCM777 ENTERPRISES, INC.; and MING XU a/k/a PHIL MING XU,<br><br>Defendants,<br><br>KINGDOM CAPITAL MARKET, LLC; MANNA HOLDING GROUP, LLC; MANNA SOURCE INTERNATIONAL, INC.; WCM RESOURCES, INC.; AEON OPERATING, INC.; AND PMX JEWELS, LTD., TOPACIFIC INC., VINCENT MESSINA and INTERNATIONAL MARKET VENTURES<br><br>Relief Defendants. | Case No. CV-14-2334-CAS-MRW<br><br>**DECLARATION OF VINCENT MESSINA**<br><br>Ctrm:  5 - 2nd Floor<br>Judge: Hon. Christina A. Snyder |

**VINCENT MESSINA**, under penalty of perjury, hereby declares as follows:

1. I am a relief defendant in this proceeding and submit this declaration pursuant to the Court's order of May 14, 2014 to describe amounts received from World Capital Markets, ToPacific and/or Ming Xu, and disbursements of those amounts.

2. During the period July 1, 2013 through February 28, 2014, I received a series of monthly payments of $5,000.00 each from World Capital Markets, totaling $35,000.00. I received those amounts as fees for services performed for World Capital Markets relating primarily to advice rendered to Ming Xu concerning potential business transactions. Those

funds that I received were disbursed by me in the ordinary course of my business for business and personal expenses.

3. In or about December 17, 2013, I received a payment of $200,000 from World Capital Markets. Those funds were paid to me in relation to the formation of a political action committee ("PAC"), deposited by me into a Chase Bank account. There is no contract or writing that reflects the purpose of that transfer from World Capital Markets to me.

4. I retained International Market Ventures ("IMV") to provide services relating to the formation of that PAC and entered into a contract with IMV dated December 4, 2013. Exhibit 1: Consulting Contract.

5. I also performed services relating to the formation of that PAC, beginning on or about November 19, 2013, including participating in a series of meetings and engaging in research and preparation of documents. Since the filing of this action, I have reviewed my records to determine the total amount of time that I spent in relation to that project, and have confirmed that the amount that I am owed exceeds the remaining $100,000 that I had retained from the initial payment of $200,000. I listed those services on a Statement of Account which reflects a total of 174 hours over the course of approximately eight weeks. Exhibit 2: Statement of Account. At my billing rate of $700.00 per hour, I am owed $121,800 in fees, to which the $100,000 that I received was applied.

6. I also received a transfer of $5,000,000 from ToPacific on February 26, 2014. As previously stated, Xu transferred those funds into my IOLTA account at Bank of America, ending 2887. Exhibit 3: Bank Statements Messina IOLTA account ending 2887, for the period February 4, 2014 through March 31, 2014. Xu advised me of the transfer after the fact and asked

that I "hold" those funds and I declined to do so. We then entered into a Loan Agreement, dated February 27, 2014, pursuant to which he would receive interest at the rate of 5% per annum for five years. Exhibit 4: Loan Agreement dated February 27, 2014.

7  On the following day, Friday, February 28, 2014, I transferred $950,000 to my Bank of America account ending 2890. Ex. 3: BOA Bank Statements, account ending 2887; Ex. 4: BOA Bank Statements, account ending 2890. That transfer was for the purpose of moving the funds from my IOLTA account so that they would be available in my personal account and so that I could then track the investments from that account.

8. During the following week beginning March 3, 2014, I disbursed $175,000 and then $125,000 to International Market Ventures ("IMV"). On March 11, 2014, I also sent $500,000 to Andrew Savor at the Toronto Dominion Bank. Ex. 3: BOA Statements, account ending 2887. Those transfers were for the purpose the acquisition of a portion of a 45% minority interest in a Hong Kong business, CNC Consulting, reflected in the Stock Sale and Purchase Agreement dated March 1, 2014 attached as Exhibit 5. Transfers relating to the Hong Kong business, CNC Consulting, were initially sent to Andrew Savor and/or International Market Ventures because we had agreed with and I had obtained authorization from CNC Consulting to send those investment funds to Savor for the formation of a Canadian affiliate that would focus on activity in Central and South America and Puerto Rico, and to International Market Ventures for a Cayman affiliate that would focus on business in the Congo and Libya. Those Letters of Authorization are included in Exhibit 5: Letters of Authorization dated March 3, 2014.

9. On March 6, 2014, I disbursed $500,000 from the IOLTA account to another Bank of America account ending 2890. Exhibit 3: BOA Bank Statement/2887 account; Ex. 4: BOA

Bank Statement 2890 account. That transfer was for the purpose of having the funds available in my personal Bank of America business account to make further disbursements in relation to investment agreements with CNC Consulting and other entities.

10. On March 3, 2014, I transferred $300,000 from the IOLTA account to an account at Preferred Bank ending 2845. Exhibit 6: Check dated 3/3/14 deposited at Preferred Bank. On March 12, 2014, I disbursed an additional $350,000 from the IOLTA account to my account at Preferred Bank ending 2845. Ex. 7: Check dated 3/12/14 deposited at Preferred Bank.

11. Finally, on March 21, 2014, I disbursed $2,306,912 to my account at Bank of America ending 2890. Ex. 3: Bank of America statements account ending 2887.

12. With respect to the funds that were transferred to the Bank of America account ending 2890, those disbursements are reflected in Exhibit 4. On March 3, 2014, I transferred $750,000 from my Bank of America account to my account at Wells Fargo ending 8224. Exhibit 8: Wells Fargo Bank Statements. On March 5, 2014, I wrote a check to Parmesh Khatwada for $10,000, for personal reasons having nothing to do with the other business-related disbursements. On March 6, 2014, I transferred $100,000 to the account of Mohammed Eifatih at the Abu Dhabi Islamic Bank to be used for acquisition of real estate in Khartoum, Sudan on behalf of CNC Consulting.

10. On March 8, 2014, I drew a total of $306,000 from that Bank of America account, of which $279,000 was then transferred to Andrew Savor in relation to the business of CNC Consulting. The remaining $27,000 was paid to the United States Treasury. Exhibit 9: Withdrawal Slip 3/8/14.

11. On March 24, 2014, I transferred $500,000 from Bank of America to my account at Wells Fargo and an additional $350,000 to International Market Ventures for the Hong Kong business, CNC Consulting... On March 26, 2014, I transferred $700,000 to my account at Preferred Bank ending 2845. On March 28, 2014, I drew $200,000 from the Bank of America account ending 2890 in a cashier's check. Ex. 10: Debit dated March 28, 2014. I was not able to locate that check and have asked Bank of America to credit those funds to the account so that the funds can be added to the escrow account at Thompson Hine. Also on March 28, 2014, I transferred $350,000 directly to CNC Consulting Limited. During the period through March 31, 2014, I also made a series of small disbursements for travel, food and other items as reflected on the statement of my account for the month of March 2014.

12. With respect to my Wells Fargo account ending 8224, disbursements from that account are reflected in Exhibit 7. I disbursed $237,000 to Nuvola LLC on March 10, 2014 for the purpose of investing in the development of a new casino gaming software. On the same day, I transferred an additional $95,000 to Mohammed Eifatih for the purpose of making an additional payment on the real estate acquisition in Khartoum, Sudan. Documents relating to that real estate acquisition are attached as Exhibit 11.

13. On March 25, 2014 I transferred $905,000 from Bank of America to the Wells Fargo account ending 8224. On March 31, 2014, I transferred an additional $400,000 from Wells Fargo to International Market Ventures also for the CNC investment.

14. With respect to the funds that were transferred to Andrew Savor, those were originally intended to be used for a Canadian entity to focus on Central and South American projects. After issues developed in relation to Ming Xu, I decided to agree to escrow the

undisbursed amount of approximately $2.3 million, and it became clear that I would therefore not be able to proceed with the larger investment. At that point, I asked that the funds sent to Andrew Savor be applied directly to the Hong Kong company. It is my understanding that he did so.

15. Similarly, with respect to funds paid to International Market Ventures, Gary Messina decided not to proceed with the formation of the Cayman affiliate and so those funds were also forwarded to CNC in relation to the initial acquisition in that entity. Of the total that was disbursed to IMV, $100,000 of that was applied to the amount owed to him under the contract, $840,000 was transferred to CNC Consulting, and $100,000 was transferred to the Thompson Hine escrow account.

16. With respect to my Preferred Bank account, I transferred $300,000 to that Preferred account on or about March 3, 2014. Ex. 9: Check from BOA IOLTA to Vincent Messina. I transferred $350,000 to the Preferred account on or about March 12, 2014. Ex. 10: Check from BOA IOLTA to Vincent Messina. On March 26, 2014, another $700,000 was transferred from Wells Fargo to Preferred, On March 31, 2014, I disbursed $200,000 by check to a company called Belmont which is in the business of trading commodities with China. The documents relating to this exhibit are still being gathered.

17. At the request of the Receiver, I thereafter transferred funds to the Thompson Hine escrow account from the Preferred and Wells Fargo accounts. On or about April 3, 2014, I wired $450,000 from the Wells Fargo account. I also arranged for International Market Ventures to transfer to the escrow account the total remaining in its account of $100,000. I also wired $519,614.62 from my account at Bank of America to Thompson Hine. Finally, I wire transferred

a total of $1,063,600.00 from my account at Preferred Bank. A total of $2,133,214.62 was transferred to the Thompson Hine account and Bank of America was asked to credit an additional $200,000 for transfer to Thompson Hine, bringing the total to more than $2.3 million.

18. At the direction of the Court, I have since requests for repatriation of the funds to each of these recipients: CNC Consulting, Andrew Savor, Nuvola, Belmont and Mohammed Eitafih. The form of the letter is reflected in Exhibit 11. Since then, I understand that my counsel has received a response from Nuvola, which is contained at Exhibit 12. Counsel is continuing efforts to obtain responses from the other recipients.

Dated: May 19, 2014

_____
Vincent Messina

STATE OF CALIFORNIA COUNTY OF Los Angeles
Subscribed and sworn to (or affirmed) before me on this 19 day of 05, 2014 by VINCENT MESSINA proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
(Signature of Notary)
TRAVIS-MATTHEW CHUNG-CHIU CHOW,
NOTARY PUBLIC

TRAVIS-MATTHEW CHUNG-CHIU CHOW
COMM. # 1993058
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. October 4, 2016