ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax:  (213) 620-8816
E-Mail: dzaro@allenmatkins.com
           thsu@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
600 West Broadway, 27th Floor
San Diego, California 92101
Phone: (619) 233-1155
Fax:  (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
KRISTA L. FREITAG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>WORLD CAPITAL MARKET INC.; WCM777 INC.; WCM777 LTD. d/b/a WCM777 ENTERPRISES, INC.; and MING XU a/k/a PHIL MING XU,<br><br>  Defendants,<br><br>KINGDOM CAPITAL MARKET, LLC; MANNA HOLDING GROUP, LLC; MANNA SOURCE INTERNATIONAL, INC.; WCM RESOURCES, INC.; AEON OPERATING, INC.; PMX JEWELS, LTD.; TOPACIFIC INC.; TO PACIFIC INC.; VINCENT J. MESSINA; and INTERNATIONAL MARKET VENTURES,<br><br>  Relief Defendants. | Case No. CV-14-2334-JFW-MRW<br><br>**NOTICE OF MOTION AND MOTION TO CONCLUDE RECEIVERSHIP AND FOR ORDER: (1) AUTHORIZING RECEIVER TO MAKE FINAL DISTRIBUTIONS TO APPROVED CLAIMANTS AND ESTABLISH RESERVE; (2) APPROVING FINAL ACCOUNTING AND REPORT; (3) APPROVING DISPOSITION OF BOOKS AND RECORDS; AND (4) CONDITIONALLY DISCHARGING RECEIVER; RECEIVER'S FINAL ACCOUNTING AND REPORT**<br><br>Date:    October 1, 2018<br>Time:    1:30 p.m.<br>Ctrm:    16<br>Judge:   Hon. John F. Walter |

1  **TO THE HONORABLE JOHN F. WALTER, JUDGE OF THE UNITED**

2  **STATES DISTRICT COURT, AND ALL INTERESTED PARTIES:**

3  **PLEASE TAKE NOTICE** that on October 1, 2018, at 1:30 p.m. in

4  Courtroom 16 of the above-entitled Court, located at 350 W. 1st Street, Los Angeles,

5  California 90012, Krista L. Freitag ("Receiver"), the Court-appointed permanent

6  receiver for Defendants World Capital Market Inc.; WCM777 Inc.; WCM777 Ltd.

7  d/b/a WCM777 Enterprises, Inc.; and Relief Defendants Kingdom Capital

8  Market, LLC; Manna Holding Group, LLC; Manna Source International, Inc.; WCM

9  Resources, Inc.; ToPacific Inc.; To Pacific Inc.; and their subsidiaries and affiliates

10  (collectively, "Receivership Entities"), will and hereby does move the Court to

11  conclude the receivership and for an order, (1) authorizing Receiver to make final

12  distributions to approved claimants and establish a reserve; (2) approving the final

13  accounting and report; (3) approving disposition of books and records; and

14  (4) conditionally discharging the Receiver ("Motion").  The Receiver and her

15  counsel, Allen Matkins, have filed their fee applications concurrently herewith.  The

16  Motion and all relevant pleadings are available at the Receiver's website,

17  www.worldcapitalmarketreceivership.com.

18  **Procedural Requirements:**  If you oppose this Motion, you are required to

19  file your written opposition with the Office of the Clerk, United States District Court,

20  350 W. 1st Street, Los Angeles, California 90012, and serve the same on the

21  undersigned not later than 21 calendar days prior to the hearing.

22  IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the

23  above date, the Court may grant the requested relief without further notice.  This

24  Motion is made following the conference of counsel pursuant to L.R. 7-3.

25  Dated:  August 21, 2018

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

26

By:  */s/ David R. Zaro*

27  DAVID R. ZARO
Attorneys for Court-appointed
Receiver KRISTA L. FREITAG

28

# **TABLE OF CONTENTS**

**Page**

I.     RECEIVER'S FINAL ACCOUNTING AND REPORT ................................1

    A.     Background and Business Assessment ..................................1

    B.     Receiver's Forensic Accounting.............................................3

    C.     Asset Disposition and Recovery ............................................4

    D.     Receiver Reporting and Communications ...............................5

    E.     Receivership Accounting .......................................................6

    F.     Claims, Interim Distribution Process, and Epiq Fees ...........8

II.    CLOSING MATTERS .....................................................................10

    A.     Distribution to Approved Claimants, Administrative Expenses, and Establishment of Reserve..........................10

        1.     Establishment of Reserve ...............................12

        2.     Proposed Distributions....................................13

    B.     Destruction of Records..........................................................14

    C.     Discharge of Receiver ...........................................................14

III.   ARGUMENT ...................................................................................15

    A.     Broad Equitable Powers of the Court ....................................15

    B.     Conclusion of Receivership and Discharge of Receiver ......16

IV.    CONCLUSION ................................................................................17

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.,*
   205 F.3d 1107 (9th Cir. 1999) ........................................................... 13

*First Empire Bank-New York v. FDIC,*
   572 F.2d 1361 (9th Cir. 1978) ........................................................... 14

*SEC v. Capital Consultants, LLC,*
   397 F.3d 733 (9th Cir. 2005) ............................................................. 13

*SEC v. Elliot,*
   953 F.2d 1560 (11th Cir. 1992) ......................................................... 13

*SEC v. Hardy,*
   803 F.2d 1034 (9th Cir. 1986) ...................................................... 13, 14

*SEC v. Wencke,*
   622 F.2d 1363 (9th Cir. 1980) ........................................................... 12

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Krista Freitag, the Court-appointed Receiver herein, respectfully submits this Memorandum of Points and Authorities in Support of her motion to conclude the receivership and: (1) authorizing the Receiver to make final distributions to approved claimants and establish reserve; (2) approving the final accounting and report; (3) approving disposition of books and records; and (4) conditionally discharging the Receiver ("Motion").  The Receiver and her counsel have filed their fee applications concurrently herewith.

The Receiver has completed management of all assets of the receivership estate.  The Receiver recovered a total of $38.002 million and spent approximately $7.389 million on preservation and maintenance of assets (includes $51,431 of anticipated non-administrative expenses to be incurred), for an anticipated net recovery of approximately $30.613 million.  The Receiver's fees and costs, if all fee applications are approved, amount to approximately $2.279 million, or about 6% of the total recovery.  Administrative fees and costs for the Receiver's counsel amount to approximately $2.021 million, or about 5% of the total recovery.  If all fee applications are approved, the Receiver will distribute about 84% of the total net recovery to investors under the distribution plan approved by the Court on November 28, 2016 (the "Distribution Plan"), or about $25.779 million.  Investors with approved claims will recover about 49.4 cents for each dollar invested.

The relief sought herein will allow the Receiver to take the remaining steps necessary to conclude the receivership, including making final distributions to approved claimants.

## I.   RECEIVER'S FINAL ACCOUNTING AND REPORT

### A.   Background and Business Assessment

On March 27, 2014, the Commission filed a Temporary Restraining Order ("TRO") and the Court appointed Krista L. Freitag ("Receiver") temporary receiver for Defendants World Capital Market Inc. ("WCM"), WCM777 Inc. ("WCM777"),

and WCM777 Ltd. d/b/a WCM777 Enterprises, Inc. ("WCM777 Enterprises"), and Relief Defendants Kingdom Capital Market, LLC ("KCM"), Manna Holding Group, LLC ("MHG"), Manna Source International, Inc. ("MSI"), WCM Resources, Inc. ("WCM Resources"); and their subsidiaries and affiliates.

Pursuant to the TRO and law governing federal equity receivers, the Receiver was charged with, among other things, (1) assuming control over the Receivership Entities and their assets ("Receivership Assets"), (2) performing an accounting of the assets and financial condition of the Receivership Entities, (3) investigating, locating, and recovering Receivership Assets, and (4) preparing reports for the Court.

Promptly upon her appointment, the Receiver took possession of the Receivership Entities, including the primary business locations located at 150 South Los Robles Avenue, Suite 900, Pasadena, California and 3620 Cypress Avenue, El Monte, California.  It was believed the Receivership Entities were also operating out of 1218 John Reed Court, City of Industry, California; however, this location had been vacated.  Upon takeover, the Receiver secured the Receivership Assets, including bank accounts, real and personal property, books, records, domains, computers and electronic devices, and WCM email accounts.

On April 10, 2014, the Court entered a Preliminary Injunction Order, which included appointment of the Receiver on a permanent basis.  Dkt. No. 33.  On May 21, 2014, the Court entered a Preliminary Injunction Order against additional Relief Defendants Vincent Messina ("Messina"), International Market Ventures ("IMV"), ToPacific, Inc. and To Pacific, Inc., and expressly appointed the Receiver for WCM affiliates ToPacific, Inc. and To Pacific, Inc. ("ToPacific Order").  Dkt. No. 75.  Hereinafter, the TRO, Preliminary Injunction Order, and ToPacific Order will be collectively referred to as the "Appointment Orders."  Hereinafter, the Defendants and Relief Defendants placed into receivership by the Appointment Orders are referred to collectively as the "Receivership Entities" or individually as a "Receivership Entity."

While taking control over each of the business locations, the Receiver met with and interviewed Phil Ming Xu, employees, consultants, and others who were present at each location.  These interviews, along with a review of WCM's email accounts yielded significant information concerning a myriad of investments, loans, and fund transfers made in the days and months leading up to the receivership appointment.

Other than two golf courses, the Receiver's investigation quickly indicated that none of the Receivership Entities generated any revenue from business operations.  Accordingly, the Receiver did not retain employees of the Receivership Entities other than golf course employees, and promptly pursued recovery of the various investments, loans and fund transfers.

Through diligent and timely efforts, the Receiver was able to generate significant value for the estate through the marketing and Court-approved sales of the real and personal property assets, and recovery of various other investments and transfers.

On May 16, 2018, the Securities and Exchange Commission and the Receiver stipulated to entry of Judgment against the Receivership Entities.  Dkt. No. 571.  The Final Judgment was entered on May 17, 2018.  Dkt, No. 572.

### B.  Receiver's Forensic Accounting

The Receiver was ordered to "make an accounting, as soon as practicable, to this Court of the assets and financial condition of the Receivership Entities and to file the accounting with the Court and deliver copies thereof to all parties."  On February 27, 2015 (Dkt. No. 302), the Receiver filed her Forensic Accounting Report, which reflected analysis of 77 domestic and 23 foreign bank accounts.

The overarching findings were as follows: (1) The Receivership Entities' primary source of income was investor deposits, which was also the primary source of virtually all funds distributed to the investors; (2) The vast majority of the Receivership Entities' business activities revolved around raising and distributing

investor funds; and (3) Investor funds were so materially commingled between and among the Receivership Entities that the entities operated as a unitary enterprise, rather than as separate entities.

The Receiver's forensic accounting work as of February 27, 2015 showed investor net losses of approximately $80.8 million (approximately $99.4 million was received from investors and approximately $18.6 million distributed to investors). As of that date, $57.2 million of investor deposits had been verified, while $44.5 million of deposits remained uncategorized because source data had not yet been obtained for the foreign bank accounts.

Subsequent to publishing the Forensic Accounting Report, the Receiver was able to obtain the underlying source data and verify that $42.2 million of the $44.5 million of the previously uncategorized deposits were investor deposits – resulting in total verified investor deposit amount of $99.4 million.

The forensic accounting data was used to validate claims and as a foundation for the Receiver's distribution plan.  It was also used to complete pre-receivership tax returns for the Receivership Entities, and for the receivership estate's Qualified Settlement Fund (QSF) entity.

## C.    Asset Disposition and Recovery

Pre-receivership, the Receivership Entities used investor funds to make investor payments, pay operating expenses, and make offshore fund transfers.  In addition, they purchased real and personal property, made investments, and transferred money to insiders and third parties.

The Receiver recovered a total of approximately $38.0 million from three major sources of revenue: (1) $10.5 million from Court-approved sales of real property, (2) $22.2 million from other investments and transfers, and (3) $5.3 million of revenue from operations of two golf courses.

The table below summarizes the recoveries:

| Table 1: Total Revenues from all Sources | | | |
|---|---|---|---|
| **Sales of Real Property** | | | $10,499,047 |
| | Glen Ivy Golf Course in Corona, CA (includes water deposit) | 4,123,816 | |
| | Residence: 710 Arabian Lane, Walnut, CA | 2,334,617 | |
| | Warehouse: 3620 Cypress Avenue, El Monte, CA | 1,490,155 | |
| | Residence: 3607 Elfwood Drive, Monrovia, CA | 957,333 | |
| | Golf Course in Lake Elsinore, CA (includes liquor license) | 675,809 | |
| | Vacant Land in New Cuyama, CA | 492,275 | |
| | Residence: 16114 Grand Avenue, Lake Elsinore, CA | 425,042 | |
| **Other Investments and Transfers** | | | $22,246,650 |
| | Cash in Accounts at Takeover | 2,242,756 | |
| | Cash recoveries (includes Horsman Law Firm recovery) | 13,300,066 | |
| | Vincent J. Messina | 2,133,214 | |
| | Sue Wang, et al. | 1,205,000 | |
| | Frequency Networks, Inc. | 1,000,002 | |
| | Myco Technology | 750,000 | |
| | Daniel John Lazarus | 750,000 | |
| | Sales of Personal Property | 340,498 | |
| | James Dantona, Governmental Impact, Zayda Aberin, ZHB International | 271,000 | |
| | Miscellaneous (legal retainers, office deposits, insurance claims, interest) | 229,114 | |
| | WCM Resources | 25,000 | |
| **Golf Course Revenue** | | | $5,256,659 |
| | Gross revenue | 5,256,659 | |
| | | | |
| **Total Recovery** | | | 38,002,356 |

## D.    Receiver Reporting and Communications

At the beginning of the receivership, the Receiver established a dedicated web page, which has provided case information, updates, and answers to frequently asked

1  questions to investors and creditors.  The internet address for the webpage is

2  www.worldcapitalmarketreceivership.com.  The Receiver also maintained a

3  dedicated email address and telephone line for investor inquiries.  Case updates often

4  triggered voluminous investor inquiries, so the Receiver's staff regularly returned a

5  significant volume of emails and phone calls in both English and Spanish.  In view of

6  the volume of calls and correspondence, the Receiver utilized associates at lower

7  billing rates to handle the majority of these communications.

8      The Receiver also filed detailed quarterly fee applications and accounting

9  reports that kept investors and the Court advised as to the amount of money

10  recovered, the financial position of the receivership estate, and efforts to recover

11  funds for the benefit of investor victims.

12      **E.    Receivership Accounting**

13      The following summary reflects the Receivership Entities' consolidated

14  operating cash balance as of June 30, 2018:

| Table 2:  Operating Cash Balance Summary | | | |
|---|---|---|---|
| **Total Revenues** | | | 38,002,356 |
| **Disbursements (Non-Administrative)** | | | (7,337,914) |
| | Golf Course Operational Expenses | 6,821,095 | |
| | Real & Personal Property Expenses (Non-Golf) | 363,155 | |
| | WCM One-Time Payroll & Related | 46,809 | |
| | WCM Moving & Storage | 23,315 | |
| | Other Miscellaneous Expenses | 83,540 | |
| **Disbursements (Administrative)** | | | (3,722,972) |
| | Epiq - Claims Process (incl. Notice Publication) | 410,179 | |
| | Receiver Legal Fees & Expenses | 1,590,927 | |
| | Receiver Fees & Expenses | 1,721,866 | |
| **Interim Distributions (net)** | | | (17,489,156) |
| | Investor Claim Distribution (authorized initial distribution) | (21,000,000) | |
| | Check Disbursements Cashed | 16,294,534 | |

| | PayPal & Electronic Payments Claimed | 1,187,042 | |
| | PayPal Fees Paid | 7,580 | |
| **Cash on Hand as of June 30, 2018** | | | 9,452,314 |

## F.   Claims, Interim Distribution Process, and Epiq Fees

For a myriad of reasons as discussed throughout this case, the claims and distribution process has been one of the Receiver's most challenging tasks.  This was due to, (a) the lack of a comprehensive investor database, (b) the large volume of secondary market transactions whereby funds could not be traced to the Receivership Entities, (c) the large number of cash transactions with no substantiating support, (d) the investors' misunderstanding of WCM777 and Kingdom points issued (which was not an actual dollar investment), and (e) the global geographic reach of the scheme.  The Receiver worked diligently and creatively to arrive at a claims process that fairly evaluated the claims.

On July 13, 2015, the Court granted the Receiver's motion for approval of the claims process, setting the deadline to submit claims to the Receiver as November 9, 2015, which deadline was later extended to December 24, 2015.  The Receiver worked with the Court-approved claims administrator, Epiq, to implement Phase I of the approved claim process, which resulted in receipt of over 35,000 claims representing over 72,000 claimed investments.

Upon assessing and analyzing the voluminous Phase I claims data, the Receiver prepared her report on Phase I of the claims process and recommendation regarding Phase II, which was filed and approved by the Court on March 11, 2016 (Dkt. Nos. 427, 430).

On November 28, 2016, the Court entered the Amended Order: (a) Sustaining Omnibus and Specific Objections to Claims, (b) Approving Proposed Allowed Amounts of Claims, and (c) Approving Distribution Plan and Authorizing Receiver to Make Interim Distributions ("Claims Order"). Dkt. No. 522.  Upon entry of the

Claims Order, the Receiver commenced working with Epiq to process the Court-approved interim distributions.

In February 2017, the initial $21 million interim distribution was initiated via check and PayPal, depending on the selection of each allowed claimant. A total of 3,912 checks and 462 PayPal payments were initiated. Given the geographic diversity of claimants, challenges surfaced with claimants being able to negotiate their checks – from inability to negotiate a check written on a United States bank account, to claimants waiting until insufficient time existed for foreign banks to clear a check written on a United States bank account, to misplaced checks, to claimants unwillingness to provide updated address information (possibly due to immigration concerns), to undeliverable addresses (*e.g.*, claimants did not provide apartment numbers).

The Receiver worked with Epiq and the investors to troubleshoot these challenges and to get as many payments as possible negotiated and claimed. To that end, a translated email reminder was sent to all allowed claimants whose payments remained outstanding in early April 2017. An additional email went out in July 2017 requesting updated contact information from claimants whose payments remained outstanding. In light of a significant number of responses, Epiq and the Receiver reissued interim distribution payments, ultimately providing until November 9, 2017, to negotiate them.

The Receiver has successfully made a total of $17,489,156 of interim distributions and will be reissuing $755,223 of interim distributions, which respectively represent 83.3% and 3.6% of the $21 million approved interim distribution.[1] Investors who successfully negotiated their interim distribution

---

[1] Regarding the $755,223 of interim distributions to be reissued, as the Receiver proceeded with the interim distribution processes, voluminous communications occurred with approved claimants who were unable to negotiate their payments. Over time, the Receiver received updated contact or payment information from approved claimants. Interim distribution payments were then primarily reissued

payments, including those receiving checks as part of the reissuance of $755,223 of interim distributions, will be sent a final distribution – said investors are located in dozens of different countries.

## II.   CLOSING MATTERS

### A.   Establishment of Reserve, Payment of Administrative Expenses and Proposed Final Distribution

#### 1.   Establishment of Reserve

As reflected in the table below, the Receiver seeks authority to set aside funds in reserve to pay non-administrative expenses in the amount of $51,431 and projected administrative expenses to conclude the receivership of up to $190,765, for a total reserve amount of $242,196.

#### 2.   Administrative Expenses

As also reflected in the table below, the Receiver seeks approval of payment of administrative expenses incurred, not yet paid in the amount of $144,790 and holdbacks in the amount of $775,146, for a total of $919,936.

#### 3.   Proposed Final Distribution

As of June 30, 2018, the Receiver was holding cash in the total amount of $9,452,314 and anticipates additional interest income of $310, bringing cash available for the proposed final distribution to $9,452,624. Provided the Court approves the $242,196 of reserve funds ($51,431 of non-administrative expenses, plus $190,765 of projected administrative expenses), the payment of administrative fees in the amount of $919,936 ($144,790 incurred and not yet paid, plus $775,146 of holdbacks), and after payment of the $755,223 of interim distributions to be re-

---

in one large batch. Some updated information from investors, however, was received after the reissuance of interim distribution payments. These interim distribution payments have been held by the Receiver. In order to reissue said payments in a cost-effective way, the Receiver determined reissuing said payments together with final distribution payments would maximize efficiency. Therefore, the total amount of interim distributions which will now be reissued is $755,223.

issued, $7,535,269 will be available for final distributions to approved claimants in accordance with this Court's Claims Order.

The breakdown of cash on hand, as well as the interim distributions to be re-issued, the reserve, and administrative expenses, is as follows:

| Table 3:  Reserve, Administrative Expenses, Final Distribution Summary | | | |
|---|---|---|---|
| **Cash Available for Final Distribution before Reserve and Administrative Costs** | | | 9,452,624 |
| | Operating Cash on Hand 6/30/18 | 9,452,314 | |
| | Projected Interest Income Net of Bank Fees | 310 | |
| **Interim Distribution Payments to be Reissued** | | | (755,223) |
| **Disbursements (Non-Administrative RESERVE)** | | | (51,431) |
| | Projected Final Tax and Return Preparation Fees | 25,431 | |
| | Projected Storage and Document Destruction Fees | 1,000 | |
| | Contingency | 25,000 | |
| **Disbursements (Administrative RESERVE) – Projected Fees and Expenses** | | | (190,765) |
| | Projected Receiver Fees and Expenses | 88,063 | |
| | Projected Receiver Legal Fees and Expenses | 30,000 | |
| | Projected Epiq Fees and Expenses | 72,702 | |
| **Disbursements (Administrative) – Fees and Expenses Incurred, Not Yet Paid** | | | (144,790) |
| | Receiver Fees Incurred (Q4 2017 to Q2 2018) | 67,032 | |
| | Receiver Legal Fees Incurred (Q4 2017 to Q2 2018) | 27,545 | |
| | Epiq Fees Incurred | 50,213 | |

| Disbursements (Administrative) – Holdbacks | | | (775,146) |
|---|---|---|---|
| | Receiver 20% Holdback from Interim Fee Applications | 402,326 | |
| | Receiver Legal 20% Holdback from Interim Fee Applications | 372,820 | |
| Projected Cash Available for Final Distribution | | | 7,535,269 |

As noted above, all approved claimants who successfully negotiated their interim distributions, will now receive a revised prorated amount as part of the final distribution.  This is because, pursuant to the Distribution Plan, the claims of claimants who do not negotiate their interim distribution payments within 90 days and who cannot be located through a reasonable investigation are automatically and permanently extinguished.  Dkt. No. 477-1, Exhibit E, p. 4.  Therefore, investors who submitted claims, but did not negotiate their interim distribution payments and did not respond to efforts to contact them will not participate in the final distribution because their claims have been extinguished under the Distribution Plan.

Pursuant to the Distribution Plan, in the event any approved claimants have not negotiated their final distribution check(s) and/or there are funds remaining in the Reserve account after 120 days after issuance of the final distribution has passed, then the Receiver shall pay such funds to the Commission for turnover to the United States Treasury.

**B.    Destruction of Records**

The Receiver presently stores minimal files, records for the Receivership Entities' operations, personnel files, investor files, and miscellaneous documents, and electronic records.  Typically, the Receiver would destroy all records at the close of a receivership.  In this instance, the Receiver seeks approval to turn such books and records over to the United States Attorney's Office ("USAO") for use in the pending criminal matter against Mr. Phil Ming Xu and to destroy the remaining files and delete all digital records.  The Receiver proposes to give the USAO 60 days to make

a decision as to what, if any, records they wish to take.  The balance of the records will be destroyed.

## C.   Discharge of Receiver

The Receiver has successfully completed all work required under the Appointment Orders.  The Receivership Entities' assets were marshalled, protected, and successfully monetized, the accounting was completed, and the claims of investors and others were adjudicated.  As such, it is appropriate for the Receiver to ask the Court to enter an order discharging her upon the following conditions:

1. The Receiver shall cause the final distribution to approved claimants to be completed in accordance with the Claims Order and Distribution Plan;

2. The Receiver shall complete the tasks outlined in this Motion, including the preparation of tax returns and payment of taxes, and the payment of actual fees and expenses of the Receiver and her professionals;

3. In accordance with the Distribution Plan, following 120 days after the final distribution to claimants, the Receiver shall turn over to the Commission any balance of funds; and

4. Within 180 days after the final distribution to approved claimants has been made, the Receiver shall file a declaration with the Court providing a final accounting regarding use of the Reserve funds, along with an order discharging the Receiver ("Discharge Order"), in the form attached hereto as **Exhibit A**, which Discharge Order may be entered by the Court without further notice or a hearing.

## III.   ARGUMENT

## A.   Broad Equitable Powers of the Court

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly

and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).  As the appointment of a receiver is authorized by the broad equitable powers of the Court, any distribution of assets must also be done equitably and fairly.  *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.  The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.  The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.  A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve the[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").  Accordingly, the Court has broad equitable powers and discretion in the administration of the receivership estate and disposition of receivership assets.

## B.   Conclusion of Receivership and Discharge of Receiver

Federal District Courts presiding over federal equity receiverships have broad power and wide discretion in the supervision of the same.  *SEC v. Hardy*, 803 F.2d

1034, 1037-38 (9th Cir. 1986).  Their power and discretion includes the authority to "make rules which are practicable as well as equitable."  *Id.* at 1039 (quoting *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)).  In this case, the Court's supervision of the receivership is guided by these same rules.

The Receiver has diligently carried out her Court-ordered duties, including assuming control of enterprises, marshalling and selling assets, performing a forensic accounting, pursuing claims, providing detailed reports to the Court, conducting a very complicated claims process, and if this Motion and the fee applications filed herewith are granted, ultimately distributing nearly $26 million.  As there is no further benefit to be gained from maintaining this receivership, the Receiver requests that she be discharged and the case be closed, effective upon completion of the final closing tasks as described in Section II above.

Effective upon completion of the closing tasks, the Receiver requests the Discharge Order (attached hereto as Exhibit A) be entered, which order discharges the Receiver and fully releases the Receiver and counsel of: (i) all duties under the Appointment Orders, and (ii) any and all claims and liabilities associated with the case and the Defendants.  In addition, the Receiver asks the Court to approve and ratify all actions taken by the Receiver and her professionals in the performance of the Receiver's Court-ordered duties.  The Receiver further requests the Court retain exclusive jurisdiction over any and all new actions or claims related to the receivership or work done by the Receiver and her professionals to carry out the Receiver's Court-ordered duties.  It is necessary and appropriate to issue the requested "conditional" discharge order.

\\\

\\\

\\\

# IV.    CONCLUSION

For the foregoing reasons, the Receiver respectfully requests the Court grant the Motion and issue the proposed Discharge Order submitted herewith.

Dated:  August 21, 2018

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP


By:    */s/ David R. Zaro*
DAVID R. ZARO
Attorneys for Receiver
KRISTA L. FREITAG

# EXHIBIT A

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>WORLD CAPITAL MARKET INC.; WCM777 INC.; WCM777 LTD. d/b/a WCM777 ENTERPRISES, INC.; and MING XU a/k/a PHIL MING XU,<br><br>        Defendants,<br><br>KINGDOM CAPITAL MARKET, LLC; MANNA HOLDING GROUP, LLC; MANNA SOURCE INTERNATIONAL, INC.; WCM RESOURCES, INC.; AEON OPERATING, INC.; PMX JEWELS, LTD.; TOPACIFIC INC.; TO PACIFIC INC.; VINCENT J. MESSINA; and INTERNATIONAL MARKET VENTURES,<br><br>        Relief Defendants. | Case No. CV-14-2334-JFW-MRW<br><br>**[PROPOSED] ORDER DISCHARGING RECEIVER AND CLOSING RECEIVERSHIP**<br><br>Date:    October 1, 2018<br>Time:    1:30 p.m.<br>Ctrm:    16<br>Judge:  Hon. John F. Walter |

24
25
26
27
28

**Exhibit A**
**Page 17**

The Court having considered the Declaration of Krista L. Freitag Regarding Accounting of Reserve and Completion of Closing Tasks, and good cause appearing therefor, IT IS HEREBY ORDERED as follows:

1.      The Receiver is discharged of all duties under the Temporary Restraining Order and Orders: (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; (5) Authorizing Alternative Service; (6) Repatriating Assets; and (7) Appointing a Temporary Receiver, and Order to Show Cause re Preliminary Injunction and Appointment of a Permanent Receiver entered by this Court on March 27, 2014 ("TRO") (Dkt. No. 14), the Preliminary Injunction, Appointment of a Permanent Receiver, and Related Orders entered by this Court on April 10, 2014 ("Preliminary Injunction Order") (Dkt. No. 33), and subsequent orders of the Court.  Pursuant to the discharge, the Receiver is released from any and all claims and liabilities associated with the receivership, the receivership entities, and the individual defendants named in this action.

2.      All actions taken by the Receiver and her professionals in performing the Receiver's Court-ordered duties under the TRO, Preliminary Injunction Order, and subsequent orders of the Court are approved and ratified.

3.      The Receiver is discharged from any further responsibility for payment of liabilities of the Receivership Entities.

4.      The receivership is closed.

5.      Jurisdiction over all disputes, claims, and causes of action arising from or relating to this receivership case is reserved in this Court.


Dated: _____          _____
                                         Hon. John F. Walter
                                         Judge, United States District Court

**Exhibit A**
**Page 18**