1   ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
2   DAVID R. ZARO (BAR NO. 124334)
    TIM C. HSU (BAR NO. 279208)
3   865 South Figueroa Street, Suite 2800
    Los Angeles, California 90017-2543
4   Phone: (213) 622-5555
    Fax: (213) 620-8816
5   E-Mail: dzaro@allenmatkins.com
             thsu@allenmatkins.com
6
    ALLEN MATKINS LECK GAMBLE
7     MALLORY & NATSIS LLP
    EDWARD G. FATES (BAR NO. 227809)
8   600 West Broadway, 27th Floor
    San Diego, California 92101
9   Phone: (619) 233-1155
    Fax: (619) 233-1158
10  E-Mail: tfates@allenmatkins.com

11  Attorneys for Receiver
    KRISTA L. FREITAG
12

13                  **UNITED STATES DISTRICT COURT**

14                  **CENTRAL DISTRICT OF CALIFORNIA**

15                       **WESTERN DIVISION**

| | |
|---|---|
| 16  SECURITIES AND EXCHANGE COMMISSION, | Case No. CV-14-2334-JFW-MRW |
| 17                    Plaintiff, | |
| 18         v. | **DECLARATION OF KRISTA L. FREITAG REGARDING ACCOUNTING OF RESERVE AND COMPLETION OF CLOSING TASKS; REQUEST FOR ENTRY OF ORDER DISCHARGING RECEIVER AND CLOSING RECEIVERSHIP** |
| 19  WORLD CAPITAL MARKET INC.; WCM777 INC.; WCM777 LTD. d/b/a WCM777 ENTERPRISES, INC.; and | |
| 20  MING XU a/k/a PHIL MING XU, | |
| 21                 Defendants, | |
| 22  KINGDOM CAPITAL MARKET, LLC; MANNA HOLDING GROUP, LLC; MANNA SOURCE | Ctrm:    16 |
| 23  INTERNATIONAL, INC.; | Judge:   Hon. John F. Walter |
| 24  WCM RESOURCES, INC.; AEON OPERATING, INC.; PMX | |
| 25  JEWELS, LTD.; TOPACIFIC INC.; TO PACIFIC INC.; VINCENT J. | |
| 26  MESSINA; and INTERNATIONAL MARKET VENTURES, | |
| 27                Relief Defendants. | |
| 28 | |

I, Krista L. Freitag, declare:

1.     I am the permanent receiver for Defendants World Capital Market Inc.; WCM777 Inc.; WCM777 Ltd. d/b/a WCM777 Enterprises, Inc.; and Relief Defendants Kingdom Capital Market, LLC; Manna Holding Group, LLC; Manna Source International, Inc.; WCM Resources, Inc.; ToPacific Inc.; To Pacific Inc.; and their subsidiaries and affiliates (collectively, "Receivership Entities").

2.     This declaration is made pursuant to my Motion to Conclude Receivership ("Motion to Conclude") (Dkt. 576) and Revised Order Granting Receiver's Motion to Conclude Receivership ("Order to Conclude").  Dkt. 584.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify to such facts under oath.

3.     As laid out in my Motion to Conclude and approved by the Order to Conclude, I have completed the tasks remaining to close the receivership, including (a) issuing final distributions to claimants with approved claims pursuant to the Claims Order and approved Distribution Plan and allowing the required 120 days for claimants to negotiate their checks, (b) paying Court-approved expenses, and fees and costs to professionals, and (c) making arrangements with the Securities and Exchange Commission ("Commission") regarding turnover of the remaining balance in the receivership estate to the United States Treasury.  I have also directed that the final tax returns for the receivership estate be completed, which returns will be ready to be filed upon final determination of the fee and cost payments discussed below.

**Final Accounting of Receivership Estate Funds**

4.     The final accounting of funds remaining in the receivership estate as of the date the Order to Conclude was entered is as follows:

| | Projected Amounts in Motion to Conclude | | Actual Cash Activity through July 31, 2019 | |
|---|---|---|---|---|
| Actual Operating Cash on Hand 6/30/18 | 9,452,314 | | 9,452,314 | |
| Projected & Actual Interest Income Net of Bank Fees | 310 | | 6,328 | |
| **Total Cash Available for Final Distribution before Reserve and Administrative Costs** | | **$9,452,624** | | **$9,458,642** |
| Projected & Actual Final Tax and Return Preparation Fees | 25,431 | | 16,112 | |
| Projected & Actual Storage and Document Destruction Fees | 1,000 | | 1,471 | |
| Contingency | 25,000 | | 103 | |
| **Total Projected & Actual Disbursements (Non-Administrative RESERVE)** | | **(51,431)** | | **(17,686)** |
| Projected & Actual Receiver Fees and Expenses | 88,063 | | 84,837 | |
| Projected & Actual Receiver Legal Fees and Expenses | 30,000 | | 30,000 | |
| Projected & Actual Epiq Fees and Expenses | 72,702 | | 72,702 | |
| **Total Projected & Actual Fees and Expense Disbursements (Administrative RESERVE)** | | **(190,765)** | | **(187,539)** |
| Receiver Fees Incurred & Paid (Q4 2017 to Q2 2018) | 67,032 | | 67,032 | |
| Receiver Legal Fees Incurred & Paid (Q4 2017 to Q2 2018) | 27,545 | | 27,545 | |
| Epiq Fees Incurred & Paid | 50,213 | | 50,213 | |
| **Total Incurred & Paid Fees and Expense Disbursements (Administrative)** | | **(144,790)** | | **(144,790)** |
| Receiver 20% Holdback from Interim Fee Applications | 402,326 | | 402,326 | |
| Receiver Legal 20% Holdback from Interim Fee Applications | 372,820 | | 372,820 | |
| **Total Projected & Actual Disbursements (Administrative) – Holdbacks** | | **(775,146)** | | **(775,146)** |
| **Projected Interim Distribution Payments** | | **(755,223)** | | |
| **Projected Cash Available for Final Distribution** | | **(7,535,269)** | | |

| | | | | |
|---|---|---|---|---|
| Interim & Final Distribution Payments Actually Cashed by Claimants | | | | (7,347,709) |
| Total Projected & Actual Remaining Cash | | $0 | | $985,772 |

### Fees and Costs for Additional Receiver Work

5.      For a variety of reasons, including the complex distribution process and the Vasquez matter (further discussed below), the final number of hours to complete wrap-up of this receivership is estimated to be slightly greater than my original estimate in the Motion to Conclude.  Accordingly, I'm requesting authority to pay my company, E3 Advisors, up to $5,000.00 for fees and costs incurred above and beyond the pre-approved amount.  I have discussed this matter with counsel for the Commission and have been advised the Commission does not oppose payment of these fees and costs and have included such relief in the proposed Order Discharging Receiver and Closing Receivership ("Discharge Order") submitted herewith.

### Fees and Costs for Additional Legal Work

6.      At the time my Motion to Conclude was filed, Allen Matkins and I estimated the legal fees for work remaining to close the receivership would be approximately $30,000.  After the Motion to Conclude was filed, an investor, Rigoberto Vasquez, who had filed an putative class action in the United States District for the Southern District of New York against HSBC Bank, objected to the Motion to Conclude on the grounds that the Receiver should be required to preserve documents and produce them to him at the receivership estate's expense (Dkt. 577). This lead to significant unexpected legal work, including to prepare the Receiver's response to Mr. Vasquez's objection (which was overruled by the Court), conference with his counsel regarding the estimated costs of producing the requested documents, as well as issues concerning the confidentiality of investor data contained in the records requested.  Mr. Vasquez then sought to circumvent this Court's authority by seeking an order from the District Court in New York directing the Receiver to produce documents.  Allen Matkins prepared a response on my behalf, which was

1  submitted to the District Court in New York, resulting in denial of Mr. Vasquez's

2  request.

3      7.    I believe Allen Matkins' work to address the issues raised by

4  Mr. Vasquez was necessary and appropriate and the fees and costs are fair and

5  reasonable.  I have discussed this matter with counsel for the Commission and have

6  been advised the Commission does not oppose payment of these fees and costs to

7  Allen Matkins.  Accordingly, I request authority to pay up to $20,000.00 to Allen

8  Matkins above and beyond the pre-approved amount and have included such relief in

9  the proposed Discharge Order submitted herewith.

10          **Fees and Costs for Additional Claims Administration Work**

11      8.    As described in my prior reports with the Court, the distribution process

12  in this case is particularly complex due to the large number of claims and the location

13  of claimants around the world.  Significant time devoted to the final distribution

14  process was included in my original estimate of remaining work, but the total number

15  of hours and postage costs ended up being a greater than my estimate.

16      9.    I believe Epiq's work was necessary and appropriate and played a

17  material role in maximizing the amount of successful final distributions made to

18  investors throughout the world.  I have discussed this matter with counsel for the

19  Commission and have been advised the Commission does not oppose payment of

20  these fees and costs to Epiq.  Accordingly, I request authority to pay $51,002.02 for

21  fees and costs incurred above and beyond the pre-approved amount to Epiq and have

22  included such relief in the proposed Discharge Order submitted herewith.

23          **Entry of Discharge Order**

24      10.    With all tasks remaining under the Order to Conclude having been

25  completed, and the receivership estate having been fully administered and the

26  approved distribution process completed, I request entry of the proposed Discharge

27  Order submitted herewith and closure of the receivership.

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

888648.01/SD                                    -5-

1         11.    If the proposed payments for administrative expenses discussed above

2  are approved, a total of $909,769.98 will remain in the receivership estate

3  ($985,772 - $76,002.02 = $909,769.98)[1].  Significant efforts have been made to

4  successfully distribute the final funds to allowed claimants and I do not believe it

5  would be worthwhile or advisable to make further rounds of distributions.  The costs

6  of calculating and processing each round of distribution checks are significant and the

7  economic benefit to investors at this stage would be marginal.  Accordingly, I

8  recommend that the remaining funds be turned over to the United States Treasury as

9  per the Court approved distribution plan in this matter.

10         12.    In summary, in this case, approximately $38 million in recoveries were

11  made, from which approximately $7.3 million was used to support business

12  operations (primarily golf course operating expenses), approximately $4.8 million

13  was paid in administrative expenses, approximately $25 million in allowed claimant

14  distributions were made and, if authorize by the Court, approximately $900,000 in

15  undeliverable final distributions will be turned over to the United States Treasury.

16

17       I declare under penalty of perjury under the laws of the United States that the

18  foregoing is true and correct.

19      Executed this 3rd day of September, 2019, at Los Angeles, California.

20

21                               KRISTA L. FREITAG

22

23

24

25

26  [1] It is possible there could be an additional recovery of up to approximately $355,000 based on a claim for unclaimed property I recently learned of and made on behalf

27  of Receivership Entity To Pacific, Inc.  However, the claim process is lengthy, the recovery uncertain, and the timeline unknown.  Any and all funds recovered will

28  be added to the amount to be turned over to the United States Treasury.